UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————————x

ABDELMOEZ ELASHRY,

                   Plaintiff,

         -against-

CITY OF NEW YORK; and JOHN and JANE DOE
POLICE OFFICERS 1-10,

                   Defendants.

———————————————————————————x

No. 25 Civ. 6078

**COMPLAINT
AND JURY DEMAND**

Plaintiff Abdelmoez Elashry, by and through his attorneys, Wang Hecker LLP, for his

Complaint alleges as follows:

## NATURE OF THE ACTION

1. On August 4, 2024, Plaintiff Abdelmoez Elashry called the police to report a theft

in the family home where he was staying on Staten Island. But when officers from the New

York City Police Department ("NYPD") responded and arrived at the home, they falsely arrested

Mr. Elashry instead of addressing the crime he reported.

2. The officers purported to arrest Mr. Elashry based on a Temporary Order of

Protection (the "Order"). When Mr. Elashry attempted to show the officers the Order, which

expressly allowed him to be present in the home, they refused to look at the document and

arrested him without a lawful basis.

3. Nearly twenty hours after he was taken into custody, Mr. Elashry was informed

that he was free to go home because the District Attorney had declined to prosecute him. The

District Attorney's office provided him with a letter confirming that disposition.

1

4. Mr. Elashry suffered severe physical pain and emotional distress during the time that he was in custody, including during an extended period when he was shackled to other arrestees despite having committed no crime. He continues to suffer from physical and emotional injuries caused by his unlawful arrest.

## JURISDICTION AND VENUE

5. This action arises under the United States Constitution, 42 U.S.C. §§ 1983 and 1988, Article I, § 12 of the New York State Constitution, New York common law, and the New York City Administrative Code.

6. This Court has jurisdiction pursuant to 28 U.SC. §§ 1331, 1343(a), and 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8. Plaintiff Abdelmoez Elashry is a natural person who resides in London, England.

9. Defendant City of New York ("City") was and is a municipality that is a political subdivision of the State of New York. At all times relevant hereto, the City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including the defendants referenced herein. In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and State of New York.

10. At all times relevant hereto, defendant Police Officers John and Jane Does 1-10 (the "Officer Defendants"), whose actual names and badge numbers are not known to Plaintiff despite reasonable efforts to obtain such information, and who are sued herein by the fictitious designation of "John and Jane Doe," were police officers and members of the NYPD. With

regard to all relevant events, the Doe Defendants were acting within the scope of their capacity as agents, servants, and employees of the City.

11.    At all relevant times, the Officer Defendants were acting under color of state law.

## JURY DEMAND

12.    Plaintiff hereby demands a trial by jury on all of his claims in this action.

## FACTUAL ALLEGATIONS

13.    In July 2024, Mr. Elashry traveled from London to New York to assist his brother, who was leaving for vacation and needed help managing his food cart business while he was away.

14.    Prior to the trip, Mr. Elashry had enjoyed a successful career as a physical therapist and physical education instructor in London.

15.    Mr. Elashry stayed at his brother's home on Staten Island for the duration of his visit.  Mr. Elashry's brother and most of his brother's family were away on a trip during Mr. Elashry's visit, but Mr. Elashry's 22-year-old nephew stayed behind at his brother's home with Mr. Elashry.

16.    During Mr. Elashry's stay at his brother's home, his nephew – who had caused significant trouble for his family in the past – frequently asked Mr. Elashry for money.  Mr. Elashry gave his nephew money for food, but Mr. Elashry observed that his nephew often spent the money on alcohol or other uses instead.

17.    On August 2, 2024, Mr. Elashry and his nephew got into an argument after his nephew vomited in the bathroom and refused to clean up the mess.  Mr. Elashry was upset by the behavior and rebuked his nephew for using money intended for food to purchase alcohol.  Mr. Elashry told his nephew that going forward, he would provide him with food instead of money.

3

18.    At around 10:00 p.m. that night, Mr. Elashry sat on the couch to watch television. Resting beside Mr. Elashry on the sofa was a waist pack filled with cash. The money was a combination of Mr. Elashry's personal funds and money that he had collected for his brother's business. The waist pack contained a total of approximately $3,000.

19.    As Mr. Elashry watched television, his nephew suddenly appeared and snatched the waist pack containing the money and started running down a flight of stairs. Mr. Elashry leapt up and tried to stop his nephew.

20.    As Mr. Elashry reached for his nephew in the middle of the staircase, his nephew grabbed him and caused him to lose his balance. Mr. Elashry began to fall down the stairs. Mr. Elashry tried to stop his fall, and his right leg twisted sideways.

21.    Mr. Elashry managed to recover the waist pack and money by taking them back from his nephew. At that point, his nephew ran from the house.

22.    Mr. Elashry felt pain in his knee following the encounter on the stairs. He iced and rested his injured knee once his nephew left the house.

23.    Approximately thirty minutes later, a large group of police officers arrived at the home seeking Mr. Elashry. The officers informed Mr. Elashry that his nephew had called 911.

24.    Mr. Elashry explained to the officers that his nephew had attempted to steal money and flee, and that his nephew was the wrongdoer in the situation. The officers ignored his account and arrested Mr. Elashry.

25.    Mr. Elashry later learned that his nephew had falsely reported to the police that Mr. Elashry had violently attacked him.

26.    Mr. Elashry expressed concern to the officers that once he was arrested and out of the house, his nephew was likely to return to the empty home and steal the money that he had

4

snatched earlier.  Mr. Elashry implored the officers to let him secure the money before they took him away, but the officers refused.

27.    Mr. Elashry was processed and taken to court where he was arraigned and released on his own recognizance.  At the arraignment, a Temporary Order of Protection was issued that limited Mr. Elashry's contact with his nephew.

28.    The Order expressly stated that it was "subject to incidental contact at 232 Kelly Blvd," the address of Mr. Elashry's brother in Staten Island.

29.    The language stating that the Order was "subject to incidental contact" at the residence where Mr. Elashry was staying was intended to ensure that Mr. Elashry could remain at the dwelling, notwithstanding that his nephew also lived there.

30.    Any reasonable NYPD officer would know that a temporary order of protection that allows incidental contact at a specific location allows the individual who is the subject of the order to be present at that location.

31.    After being released on his own recognizance, Mr. Elashry sought medical attention at Staten Island University Hospital to address his injured knee.  The emergency room at the facility was unable to perform an MRI.  Mr. Elashry was given a brace for his injured knee, along with crutches and painkillers.

32.    Mr. Elashry eventually returned to his brother's home on the night of August 3, 2024.

33.    When Mr. Elashry arrived back at the house, he discovered that the waist pack that had contained nearly $3,000 at the time of his arrest was empty.  As he feared, the money had been stolen while he was out.

34. Mr. Elashry was exhausted from his ordeal because he had not slept at the jail the night before. He fell asleep and woke up late the next day.

35. On August 4, 2024, at around 3:00 p.m., Mr. Elashry called 911 to report the theft of the money in the waist pack.

36. Two Officer Defendants arrived at the house approximately an hour after Mr. Elashry called 911. Mr. Elashry explained what had transpired and that the money in the waist pack had been stolen.

37. The Officer Defendants told Mr. Elashry to remain in the house while they went back to their car. When the Officer Defendants returned to the house, they told Mr. Elashry that he was under arrest.

38. Mr. Elashry asked why he was being arrested when he had been the victim of a crime. The Officer Defendants told him that he was not allowed to be in the house.

39. Mr. Elashry informed the Officer Defendants that the Order allowed him to be in the home. He offered to show the Officer Defendants the document and asked for permission to retrieve it. The Officer Defendants ignored his pleas.

40. Mr. Elashry had not seen or had contact with his nephew since his arrest two days earlier and entry of the Order.

41. The Officer Defendants cuffed Mr. Elashry's hands behind his back with metal handcuffs. In doing so, one or more of the Officer Defendants excessively tightened the metal handcuffs. That restricted the blood flow and caused pain and bruising to Mr. Elashry's wrists.

42. Mr. Elashry was injured and using crutches at the time of his arrest. Being handcuffed and brusquely transported by the Officer Defendants caused him significant pain and discomfort because it forced him to move and maneuver his body in painful ways.

43.    The Officer Defendants initially transported Mr. Elashry to the 121st Precinct. Once there, Mr. Elashry requested medical assistance for pain in his leg and other parts of his body, including his back and neck.  Mr. Elashry was transported from the precinct to Richmond University Medical Center for treatment.

44.    Medical providers at Richmond University Medical Center examined Mr. Elashry in response to his complaints about pain in his knee, neck, shoulder, and back.  The hospital again was unable to perform an MRI, but tests confirmed a bulging disc in Mr. Elashry's neck. Doctors prescribed Mr. Elashry painkillers for his injuries.

45.    At some point after leaving the hospital, Mr. Elashry was transported to a different NYPD facility for processing.  Officers initially directed Mr. Elashry to walk upstairs to be fingerprinted, but he was in so much pain that he could not climb the stairs.  A supervisor directed the officers who had transported Mr. Elashry to instead bring a fingerprinting machine downstairs to him.

46.    Mr. Elashry was taken from that facility back to the 121st Precinct.  He was eventually transported to Court in the morning, many hours after his unlawful arrest the previous afternoon.

47.    On the ride to the courthouse, Officer Defendants shackled Mr. Elashry to a group of approximately five or six other people who had also been arrested.  Because Mr. Elashry's knee had already been seriously injured in what was later diagnosed as a torn meniscus, these actions caused Mr. Elashry to be in excruciating pain.

48.    Mr. Elashry was pushed and pulled as he maneuvered with the group, both while being transported between locations and while sitting in the police vehicle.  Being shackled to a group of other people also severely restricted Mr. Elashry's movement and ability to rest his

7

knee.  The experience caused him significant pain, exacerbated his existing injuries, and caused new injuries to other parts of his body including his neck, back, shoulders, arm, and wrists.

49.     Once in court, Mr. Elashry sat uncomfortably in his restraints, shackled to other people for much of the time, while he waited for people to have their cases called.  Mr. Elashry asked repeatedly about the status of his case but nobody provided him with answers.

50.     Eventually, at around 1:30 p.m., Mr. Elashry was informed that the District Attorney had declined to bring charges, and that he was free to go home.  Mr. Elashry never appeared before a judge.

51.     Mr. Elashry requested confirmation that he had not been charged, and the District Attorney provided a letter stating that fact.

52.     The District Attorney's decision confirmed what had been clear all along:  Mr. Elashry had committed no crime and should not have been arrested in the first place.

53.     Mr. Elashry returned to London on August 7, 2024.

54.     After Mr. Elashry returned home, he required extensive follow-up care and numerous visits to doctors.  He received multiple MRIs, which confirmed a torn meniscus, among other injuries.

55.     Mr. Elashry relied on crutches to walk for approximately six months.  Doctors informed him that he may need surgery for the torn meniscus but that he could try a year of physiotherapy to avoid surgery.

56.     Mr. Elashry continues to experience numbness in his back and arms and also pain in his neck.  He had not experienced those symptoms until his arrest on August 4, 2024.

57.     Due to his injuries, Mr. Elashry has been unable to return to work and he may never be able to resume his professional duties.

58.     Mr. Elashry has also suffered and continues to suffer, *inter alia*, psychological and mental distress, fear, apprehension, nervousness and depression.  He has been prescribed antidepressants, something he had never taken before.

59.     Mr. Elashry filed a sworn notice of claim within ninety days after the claims alleged herein arose.  The notice was filed on October 31, 2024.

60.     Mr. Elashry sat for his 50-h examination on March 5, 2025.

61.     At least 30 days have elapsed since service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

62.     Defendants are not entitled to protection under CPLR 1601 because of, without limitation, the exclusions set forth in CPLR 1602(2)(iv) and 1602(7).

**FIRST CAUSE OF ACTION**
**False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983**
**(Against the Officer Defendants)**

63.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

64.     The Officer Defendants wrongfully and intentionally arrested Plaintiff without a warrant and without probable cause, causing him to be detained against his will and subjected to physical restraints.

65.     Plaintiff was conscious of this confinement.

66.     Plaintiff did not consent to this confinement.

67.     This confinement was not legally privileged.

68.     As a direct and proximate result of this false arrest and imprisonment, Plaintiff suffered damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 - Excessive Force**
**(Against the Officer Defendants)**

69.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

70.     At all relevant times, the Officer Defendants were acting under color of state law.

71.     The level of force employed by the Officer Defendants was excessive, objectively unreasonable, and otherwise in violation of Plaintiff's constitutional rights.

72.     No use of force was justified because Plaintiff had committed no crime. Moreover, the Officer Defendants fastened Mr. Elashry's handcuffs excessively tight, causing pain and discomfort to his wrists.

73.     As a result of the aforementioned conduct of Defendants, Plaintiff was subjected to excessive force and sustained damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 - Failure to Intervene**
**(Against the Officer Defendants)**

74.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

75.     The Officer Defendants had an affirmative duty to intervene on behalf of Plaintiff, whose constitutional rights were being violated in their presence by other officers.

76.     The Officer Defendants failed to intervene to prevent the unlawful conduct described herein.

77.     As a result of the foregoing, Plaintiff's liberty was unlawfully restricted.

78.     As a direct and proximate result of this failure to intervene, Plaintiff suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### Assault
### (Against All Defendants)

79. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

80. The Officer Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted Plaintiff, in that the Officer Defendants had the real or apparent ability to cause imminent harmful and/or offensive bodily contact to Plaintiff, and intentionally did violent and/or menacing acts, which threatened such contact to Plaintiff, and such acts caused apprehension of such contact in Plaintiff.

81. At all relevant times, the Officer Defendants were employees of Defendant City acting within the scope of their employment. Defendant City is therefore liable for the officers' wrongdoing under the doctrine of *respondeat superior*.

82. As a direct and proximate result of this assault, Plaintiff has suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Battery
### (Against All Defendants)

83. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

84. The Officer Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously battered Plaintiff including when they, in a hostile and/or offensive manner, forcefully handcuffed Plaintiff's hands and/or feet with excessively tight metal handcuffs without his consent and with the intent to cause harmful and/or offensive bodily contact to Plaintiff.

85.    At all relevant times, the Officer Defendants were employees of Defendant City acting within the scope of their employment.  Defendant City is therefore liable for the officers' wrongdoing under the doctrine of *respondeat superior*.

86.    As a direct and proximate result of this battery, Plaintiff has suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### False Arrest and Imprisonment – New York Law
### (Against All Defendants)

87.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

88.    The Officer Defendants wrongfully and illegally detained and imprisoned Plaintiff against his will by restraining him at his brother's house and in an NYPD vehicle without probable cause to believe that he had committed any crime, was about to commit any crime, or posed any threat of physical harm to the Officer Defendants or anyone else.

89.    The wrongful and false imprisonment of Plaintiff continued when he was transferred to at least one NYPD precinct, brought to a hospital while in the custody and control of the NYPD, and transported to and detained in court.

90.    The wrongful, unjustifiable, and unlawful apprehension, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause.

91.    Plaintiff was conscious of this confinement.

92.    This confinement was not legally privileged.

93.    At all relevant times, the Officer Defendants were employees of the City of New York and the NYPD acting within the scope of their employment.  Defendant City is therefore liable to Plaintiff under the doctrine of *respondeat superior*.

94.    As a direct and proximate result of this false arrest and imprisonment, Plaintiff suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**Negligent Screening, Hiring, and Retention**
**(Against City of New York)**

95.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

96.    Defendant City, through the NYPD, owed Plaintiff a duty of care to prevent the physical and mental abuse Plaintiff suffered at the hands of City employees.

97.    Upon information and belief, Defendant City, through the NYPD, owed this duty of care to Plaintiff because under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that the Officers Defendants' conduct was likely to result in an injury to Plaintiff or a similarly situated person.

98.    Upon information and belief, the Officer Defendants were unfit and incompetent for their positions.

99.    Upon information and belief, Defendant City knew or should have known through the exercise of reasonable diligence that the Officer Defendants were not fit for duty and were potentially dangerous.

100.    Upon information and belief, Defendant City's negligence in screening, hiring, and retaining the Officer Defendants directly and proximately caused Plaintiff's injuries.

101.    As a direct and proximate result of this negligence, Plaintiff has suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**Negligence**
**(Against All Defendants)**

102.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

103.    Defendant City, through the NYPD, owed Plaintiff a duty of care to prevent the physical and mental abuse Plaintiff suffered at the hands of City employees.

104.    Upon information and belief, Defendant City, through the NYPD, owed this duty of care to Plaintiff because under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that the Officers Defendants' conduct was likely to result in an injury to Plaintiff or a similarly situated person.

105.    The Officer Defendants were aware of facts that gave rise to an unreasonable risk that Plaintiff would be injured.

106.    It was foreseeable to the Officer Defendants, based on facts known to them, that Plaintiff was at risk of serious harm when they restrained him.

107.    The Officer Defendants failed to take reasonable steps to prevent Plaintiff from being injured.

108.    The City is liable for the Officer Defendants' negligence under the doctrine of *respondeat superior*.

109.    As a direct and proximate result of this negligence, Plaintiff has suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**New York City Administrative Code § 8-801 *et seq.* –**
**Unreasonable Seizure & Excessive Force**
**(Against All Defendants)**

110.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

111.    New York City Administrative Code § 8-802 protects each person's right to be secure against unreasonable seizure and the use of excessive force by the NYPD and its employees.

112.    New York City Administrative Code § 8-803 affords a private right of action for any deprivation of the rights protected by Section 8-802.

113.    The Officer Defendants' seizure of Plaintiff lacked probable cause, reasonable suspicion, or any other legal basis, in violation of Plaintiff's statutory rights under the New York City Administrative Code.

114.    The level of force employed by the Officer Defendants was excessive, objectively unreasonable, and otherwise in violation of Plaintiff's statutory rights under the New York City Administrative Code.

115.    At all relevant times, the Officer Defendants were employees of the City of New York and the NYPD acting within the scope of their employment.  Defendant City is therefore liable to Plaintiff pursuant to New York City Administrative Code § 8-803(b).

116.    As a direct and proximate result of the Officer Defendants' unreasonable seizure and use of excessive force in violation of Plaintiff's rights under New York City law, Plaintiff suffered damages in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**New York State Constitution, Art. I, § 12**
**(Against All Defendants)**

117.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

118.    By using excessive force and assaulting Plaintiff, and by arresting Plaintiff without legally sufficient justification, the Officer Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 12 of the New York Constitution.

119.    In addition, the Officer Defendants conspired among themselves to deprive Plaintiff of his constitutional rights secured by Article I, § 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

120.    The Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as NYPD officers.  Said acts by the Officer Defendants were without authority of law and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by Article I, § 12 of the New York Constitution.

121.    The Officer Defendants were responsible for the deprivation of Plaintiff's state constitutional rights.

122.    Defendant City, as employer of each of the Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

123.    As a direct and proximate result of this violation of Plaintiff's state constitutional rights, Plaintiff suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against

Defendants as follows:

    a.   Awarding compensatory damages for all physical and emotional distress, anxiety, humiliation, injury to reputation, emotional harm, pain and suffering, career, family and social disruption and other harm, in an amount to be determined at trial;

    b.   Awarding punitive damages in an amount to be determined at trial;

    c.   Awarding pre- and post-judgment interest, attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    d.   Awarding such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       October 30, 2025

By: _____
    Alexander Goldenberg
    Lily Sawyer-Kaplan

WANG HECKER LLP
111 Broadway, Suite 1406
New York, New York 10006
(212) 620-2600
agoldenberg@wanghecker.com
lsawyerkaplan@wanghecker.com

*Attorneys for Plaintiff*